Our second day of oral argument this week. Judge Martin and I are honored and pleased to welcome Judge John Rogers from the Sixth Circuit to sit with us. We are dependent upon the insistence of highly qualified visiting judges. Judge Rogers has sat with us before and we're always delighted to have him back because he's such a conscientious and hard While he sits with us, as when any other visiting judge sits with us, they're every bit as much a member of this court as anyone else is, and they have all the authority, responsibilities and assignments that anybody else on the court does. So we welcome him here today. Having said that, we'll start with Sanford v. Omni Hotels Management. Mr. Luster May it please the court? My name is Reginald Luster and I represent the appellants in this appeal, the plaintiffs in the district court, Mrs. Billie Sanford and Mr. Charles Sanford, her husband. The issue before this court is where Billie Sanford presented testimony and photographic evidence that design factors created a hidden condition. Is the issue of Omni Hotel a question of fact for the jury? On November 5, 2014, Mrs. Billie Sanford visited for the first time, Julius Bistro for the purpose of eating at the buffet. Mrs. Sanford testified in her deposition that while walking behind the host across the carpeted area, she suddenly and unexpectedly tripped and fell. Didn't she also testify that her eyes were on the host, she was watching him? Yes, she was directly behind him and she was watching him as he led her toward the buffet area. And wasn't looking down? She was not looking down, no, she was looking at the host because she was following the host. What about their argument that the reason she tripped was she wasn't watching where she was going, wasn't looking down, she was watching the host in front of her? Well, she was watching where she was going and that is she was watching the host himself. The host didn't mislead her or anything, I mean the host was going straight up the steps. That is correct, he did not mislead her as they walked toward the veranda where the buffet was served. However, she testified that as she walked and as she followed the host, suddenly and unexpectedly she fell. Afterward, she looked down to see what caused her to trip. She said that she saw that Omni Hotel in designing this particular area of the restaurant used the same multiple colors and horizontal lines that extended across both the carpet and the steps creating a dangerous hidden condition, that is to need to step up. Of course, that was after she couldn't see the steps that she wasn't looking at because of the design and pattern on the steps. She did testify that as she walked from the entranceway and following the host that she could see that the carpeted area had certain multiple colors and that it also had horizontal lines and that the same colors and horizontal lines appeared to extend up the steps. So she knew before she got to the steps that it was a difficult or dangerous situation. No sir, what I'm saying is as she walked behind the host across the carpeted area, she noticed that the carpeted area was of a certain color and had horizontal lines. After she fell, she looked back to see what caused her to trip and fall and she noticed the same colors and horizontal lines across the steps which gave the appearance that the carpeted area extended into the veranda area. But there was also a handrail, was there not going up the steps? The handrail was...vertical, I mean at a diagonal angle? The handrail was several feet away from her. They walked in the middle of this particular area so she could not reach out and touch the handrail because it was so far on this, on the right side, so far on the left side. I'm not suggesting that once she started falling, she was in any way negligent about the way she fell or anything. They've never suggested that. But the handrail would have at least been in her peripheral vision. If she noticed the carpet as she was walking forward, she would have noticed the handrail as she kept her eyes on the man who was between her and the handrail, would you not? I don't think so. And the reason I say that is because this particular area that led up to the veranda was approximately 10 to 12 feet. So the handrails, as I said earlier, would have been so far over to the left and so far over to the right that when you're walking, you might not notice the handrails. That's not what exhibit DE-28-2 shows, the photograph. It doesn't show that if you're walking in the middle, it's 10 to 12 feet to the left or right. I guess it'd be to the left. Your Honor, I can say this, that during her deposition testimony, she testified that as she walked behind the host, she did not see any handrails. I know, but that might have been negligent on her part not to have seen the handrails, to be so focused on the back of the . . . If there was negligence on her part, that is comparative fault, then that is an issue to be decided by the jury. But if the existence of the handrail prevented the optical illusion effect from being a dangerous condition, that wouldn't be decided by the jury. I disagree, Your Honor, because first of all, there is no testimony on behalf of my client or any other person that she saw the handrails. I'm not suggesting she saw the handrails. I'm suggesting that the existence of the handrails is part of the overall impression created by the carpet and the padding . . . I'm sorry, the carpet and the floor, the steps, the risers, and so forth, that determined whether or not there was an optical illusion of uniform . . . I don't believe that the handrails would bear on the issue of whether or not there was an optical illusion created by the use of the same colors and the horizontal lines . . . You don't think that the fact that there were . . . look from your exhibit being at least forty-five degrees, if not steeper, that shows that it's not a level floor? No sir, not when you're walking in the center and you don't see them. I mean, as I said earlier, she's walking behind the host. Well, one would think that whoever designed this, if there was any design behind it, would have thought that people would not be so focused on the back of the back or the head of the person in front of them that they wouldn't see a handrail on the steps as they were approaching it. I respectfully disagree, Honor, and the reason I disagree is because I've eaten at the same  But you didn't testify and give a deposition testimony? That is correct, and that's why I'm not offering . . . We can't consider your experience there any more than we could go visit it ourselves and consider our experience when we went there. Honor, I think we have to consider my client's testimony and her experience, and that this was the first time that she was in this particular area, and the host led her to the area where the buffet was being served, and she testified that as she walked along the carpet, she saw a design pattern that is the same colors and these horizontal lines that extended across the carpet and also up the steps, and therefore . . . Pardon me, Counsel. It's not really what she actually saw. That's a factual matter. It's how it appeared. I'm wondering where these photos came from. The photographs were taken by another person who also was there at the Omni Hotel attending a convention, and . . . So at the same time, this isn't something that might have been changed since . . . That is correct, Your Honor. The testimony is that . . . And it's in the evidence? I mean, it was submitted? Yes, sir. So we all agree that the handrails shown in the photograph are what was there at the time your client fell down. Is that right? That's correct. It's frustrating to me, at least, that that's the quality of photographs we have to decide this case on. We tried to find if the originals in the record in the district court, which is part of our record, of course, were any better, and they weren't. The two that, so far, I've asked you, there's no indication they were any better. Your Honor, the photographs were taken by a cell phone camera, and . . . Whatever, but it seems . . . I don't know when your client got legal representation, but it seems like someone could have taken better photographs than this. I mean, you can't tell anything from this other than the fact there's a handrail. You can tell the cloud to me. Well, Your Honor, my client's testimony is that when you look at the carpet and you look at the steps as depicted in the photographs, because the same design pattern and the same colors extend across the carpet and the steps, she contends that it created a hidden condition, that is, the need to step up. Your best argument is your client testified on page 107 of the deposition, what caused you to file the file. No, I think I was pretty explicit. Okay. Other than, you know, the carpet and everything else all blended in, looked the same, which is very confusing probably to me of thinking that everything was still on the same level. That's about it. Then she said because if you look at the picture of the steps and the carpet, it just looks all the same thing. It just looks like the same. I don't think her interpretation of the picture is very probative because we've got the picture. We can interpret it ourselves. I agree with her it all looks the same. That's because it's all washed out and you can't tell what it looks like. But your best argument is she testified that the carpet and everything else that she saw all blended in. Not that she saw before she fell, but that she saw after she fell. Am I correct? Have you got better evidence in the record than that? Yes, Your Honor. Specifically on page 154 of my client's deposition. Okay. Only after I'd fallen backwards on the steps, I felt the steps. Then what did you see? I saw the carpet that looked just like the steps. Same color, same pattern. It had a horizontal line through it that ran parallel to the steps and it looked as if the carpet extended into the veranda. Thinking the carpet was extended, it kind of camouflaged that there were steps there because of the way it looked. So the steps and the carpet looked the same. That's more details about what it looked to her after she had fallen backwards on the steps. She looked at them. So that to me is better than the photographs. Well, in addition to that, Your Honor, I think we also have to consider her testimony that's found on page 93, lines 18 through 25. She was asked a question by opposing counsel why she thought that the carpet, I'm sorry, the carpet, while she thought she still was on the carpet when she struck her left foot, that turned out to be a step. Then her testimony was, I felt that the carpet in walking, that the level had not changed. I was still on the same level and basically that's why I tripped because it was just to me, it all looked like it was all the same. So that's her testimony as she walked. So if I had thought it was different, maybe I would have done something differently, but everything just looked the same. That's page 94 actually. Right, it's page 93 and it extends on to page 94, lines 1 through 7. That's her testimony that as she was walking from the entranceway and following the host, that's her testimony that she did see the carpet, she saw the same colors and then she saw the horizontal lines and that everything appeared to be one level. Okay, let's hear from Mr. Milton now. We'll give you a full five on the report. Thank you, Your Honor. May it please the Court, I'm Michael Milton. I represent the defendant, Omni Hotels. As the Court's heard, the appellant argues that Omni was negligent in the design. Why is her testimony not enough to get her to a fact find? Her testimony is enough to get her past a state of cause of action, but to actually submit proof, in this case, in a summary judgment to get to a jury, there needs to be something more other than a plaintiff's bare assertion. The Court's in Florida. She's describing the carpet. Had that white line running from it. It wasn't distinguishable. It all looked like the same level. Well, Your Honor, for the purposes of the summary judgment motion, I believe the Court assumed that Ms. Sanford appreciated or failed to appreciate the steps. Despite the fact that she was following inches behind the gentleman walking up the steps, the handrails, and all those other issues, I think what the Court decided is that when there is a claim of a failure of duty to warn under these circumstances in an open and obvious condition, that there needs to be some proof that there is an uncommon design or mode of construction or some type of optical illusion. Her testimony is there was an optical illusion. I mean, she didn't use that term, but that's what it amounts to. Yes, Your Honor. I think the Florida law requires more than a plaintiff's, something in addition to a plaintiff's mere perception and statements on the record. She appears to have something like that in these photos to me. First time I looked at this photo, I thought, oh, that looks like a whole bunch of steps. Well, I think as a . . . I don't see why that doesn't . . . you know, maybe as a juror, I wouldn't come to that conclusion. Probably I wouldn't. But it sure seems to distinguish all of those Florida cases which say a mere step with the same color rug is not enough. Right. But this is more than a mere step, even in bad light, with the same color. It's mere steps that are designed or lined or whatever you call it, in a way that will cause some people to look at that and say, I'd be confused by that. If I'm not that person, I'm not seeing why it's not a jury issue. The district court properly found that the photos, as submitted into evidence, which as Judge Carnes has noted, are fairly poor quality. We can look at them. Yes. Jury can look at them. It's unfortunate that they're poor quality. I'm surprised there's any photos at all in this situation. Just happenstance that somebody else took a picture. Who would do that? I mean, these weren't taken at the instance of somebody's lawyer later. They're just photographs that somebody took. Is that right? That's my understanding, Judge. So that's something more, I'm thinking. Why isn't that something more? Well, the district court found that the photographs showed nothing other than that there were handrails present. We can see what the photographs show. We're looking at them. When I look at it, it looks confusing. Just me. You have to kind of look at it. Both of them. There's two photographs. Why? Right. It took me five, ten minutes to kind of see what these actually show. What it looks like is a parade of steps. And when you look at this close-up, the part that's stepped under the handrail, I guess is what it is, and the part that's not with the handrail, it looks almost identical. So these photos might convince a reasonable juror to say that this was misleading or caused her to step wrongly. That's all you need, right, to get to a jury? Well, under these facts, Judge, I believe Florida law requires something additional than photographs or statements of the plaintiff. There needs to be some Well, you're talking about the expert evidence requirement? I believe that is a requirement in the state of Florida. What's your best case for saying that you have to have an expert in a case like this? Well, there's Rice v. Whitehurst. There's the Middle District Uve Whitehurst. Yes, Your Honor. Who? Not Rice. R-I-C-E. I'm sorry. R-I-C-E v. Whitehurst out of the 4th DCA, 2001. The White v. Debbie G. Parcel case out of the Middle District in 2016. Those are cases saying because there was no expert evidence, you can't make out a cause of action in Florida on this type of claim. That's right. But in Rice, just to get your response to this, the court said expressly, here, however, there is no evidence of uncommon design or mode of construction or an optical illusion. There was no proof, I believe. And so that's what led to the further requirement for the expert. It was my understanding of Rice. In Rice, I believe the plaintiff testified that the pink square tiles with the grout all lined up consecutively from one level of the floor to the other created this illusion that there was an illusion of flatness, for lack of a better term. And that was a record that the court addressed in affirming a directed verdict for the defendant in that case. Anything else? I would simply add, Judge, that I think Florida law and the requirements as I've expressed them, and I believe are stated in not only the cases we've mentioned, but the Florida under Rule 56. To hold otherwise would be to subject defendants to virtually countless jury trials based on mere assertions from a plaintiff without anything more, like in the Kupferman or the Herigold cases that are distinguished in the district court's order. Was there anything else in Rice other than the fact that she stumbled? I mean, I understand that the court said the plaintiff offered no expert testimony, but the plaintiff also didn't offer very much of anything, which makes me wonder whether that's a very strong pillar supporting the idea that you have to have expert testimony in a case like this. Well, in Rice, I believe there were photographs submitted that demonstrated the alleged condition, showing the pink square tiles with the grout all lined up. Similar to the White case, I believe there's actually a photograph in the White opinion showing that the landing area was of the same color and texture, the grain going the same way of the wood landing and the floor. And again, the court analyzed all the Florida cases. I guess what I'm saying is, just because they say in their analysis there was no expert testimony, it's a little bit weak to say that there's an across-the-board requirement of expert testimony when you have, in the absence of testimony, something that a reasonable juror might say was an obvious danger. Yes, Your Honor, I think . . . Any other case? Well, there's certainly . . . We've cited many cases in our brief. Really, the only two cases, the Kupperman and the Herrigel cases, did not present expert testimony, one of which I think was on a motion to dismiss. But those cases presented circumstances completely unlike those here. In Kupperman, that's where a house was designed such that the kitchen table or dining table was placed over a change of elevation on the floor. Those are cases where there was expert testimony? No, sir. There was no indication in those opinions that there was. But the issue in those cases was that the stairs were concealed in some fashion, or that a defendant should have known that a patron's vision or observations would have been distracted in not looking at the condition itself. Again, not anything in the record here. Thank you. Thank you, Judge. All right. Mr. Luster, I have a question for you. Yes, sir. Sort of going along with the assumption, but as I understand the Florida cases, the Brace and we found a few in addition to that, they are uniform in holding that the mere fact that there is one color of everything, of the floors and the steps. If you use the same color, let's say beige, everybody loves beige, use beige carpet on the floor, beige carpet on the risers, beige carpet on the treads, that doesn't qualify as an actual actionable, at least, optical illusion, correct? I believe that is consistent among the Florida District Courts of Appeal. It requires more of a design. I read the case the same way you do. That's not what we have here, of course. I want to ask you, why is that not actionable, but white lines uniformly spaced throughout the carpet are? I don't understand how it's possible that an ocean of beige is less optical illusion worthy than whatever colors with horizontal lines running through it. Well, Your Honor, to answer your question, I believe that, well, I know that Florida courts have held that an optical illusion can't exist when you have more than just the same color extending from the floor and over the steps. I understand, but what makes more than uniform color more deceptive to the person walking on it as to whether there's any steps and just a solid ocean of one color? Your Honor, I believe that the case law says that an optical illusion can exist when you have other design factors as the carpet. You're just restating the conclusion. Why is that so? Why is it more deceptive to the reasonable person of ordinary prudence who's walking on the floor to have lines and patterns that blend together than to have a solid color that blends perfectly together for its entire expanse? I believe that it is color and, in addition to that, another design factor, as in this case, the horizontal lines and the fact that they extend it across the carpet and up the stairs. It is all of those factors as opposed to just a single color. You're basically just restating the conclusion. We take it then that that's just the way Florida law is and there's no rhyme or reason we can detect. It just is. Your Honor, I'm stating the facts in this case and I'm stating what my client testified to. I understand that perfectly, Counselor. It's not that complicated a case. I've read her deposition testimony on this point. Yes, sir. I'm just trying to get some help on why does Florida law say that. In implying the rule, it might help to know what the purpose of that distinction is. I just can't see it. Your Honor, perhaps I should just respond saying I don't further have an answer to your inquiry. It's not your burden to come up with one. I just thought you might. You've spent more time on this case than I have. You might have an insight on it. Well, Your Honor, I can tell you that . . . You never see anything that's camouflaged that's just solid or rarely. I've seen pictures of soldiers in desert warfare that are a solid color of beige and it camouflages  I understand, Your Honor. Maybe there's just so much solid color out there that the Florida courts have made a policy decision we can't hold everybody responsible for solid colors. Perhaps that is the case, Your Honor. Your Honor, if I could just address one issue. Florida law does not require expert testimony in proving a premise's liability case based on negligence and the failure to warn. As I mentioned in cases seven through twelve, several cases where Florida courts have reversed trial courts that granted summary judgment or dismissed complaints. In those cases, the courts have ruled that the issue of a hidden condition requiring a warning from the property owner is a question of fact from the jury. In all of those cases, the courts have never said that you must present expert testimony. That is oftentimes a prerogative of the defendants in trying to defend against these premises liability cases. But Florida . . . What about the case where you had the table or the desk that had legs of different lengths? Which case was that? Yes, Your Honor. I believe that was Pensacola Restaurant Supply . . . No, sir. I don't believe there was expert testimony in that case. If there wasn't, that would be a case that supports you. Absolutely, and that's my point. Florida law says that the plaintiff himself or herself can prove a dangerous condition by simply showing an uncommon design that creates an optical illusion and that that uncommon design creates a hidden danger that a prudent invitee would not anticipate. And that's all that's required. Neither of these cases are Supreme Court cases. They're all appeals cases. That is correct, Your Honor. But in Florida, the law is determined by the District Courts of Appeal . . . I understand. . . . unless there's a conflict. I understand. I'm just trying to . . . Yes, sir. To answer your question . . . Really? Yes, sir. And because the Supreme Court hasn't taken various decisions from the first, second, third, fourth, and fifth District Courts of Appeal, then if you look at all those decisions, they're very consistent and they don't require any expert testimony. It is the injured person . . . You say they don't require. They've allowed it to get to a jury without it. That is correct, Your Honor. Thank you. Thank you. Thank you. Appreciate it. Next case up, King v. Board. Thank you, Your Honor. Thank you, Your Honor.